

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2008

# Reyton Cedar Knoll v. HPG Intl Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2955

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Reyton Cedar Knoll v. HPG Intl Inc" (2008). *2008 Decisions.* Paper 642.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/642

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2955
_____

REYTON CEDAR KNOLL, LLC,

Appellant

v.

HPG INTERNATIONAL INC

_____

On Appeal from an Order of the United States District Court
for the District of Middle Pennsylvania
(06-cv-00159)
District Judge: Honorable William J. Nealon
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 25, 2008

Before: MCKEE, FUENTES, and WEIS <u>Circuit Judges</u>.

(Opinion Filed:  August 18, 2008)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Reyton Cedar Knoll, LLC ("Reyton") appeals from the District Court's final order, granting HPG International, Inc.'s ("HPG") motion for summary judgment. Reyton argues that the District Court erred in predicting that the Kentucky Supreme Court would apply the economic loss doctrine which bars Reyton's recovery under tort law. Finding that the record supports the District Court's ruling, we affirm.

Throughout the 1980's and 1990's, Zamias Services ("Zamias") developed, constructed and owned Ashland Galleria Mall ("the Mall") in Ashland, Kentucky. During construction, Zamias hired Universal Roofing as the roofing contract for the Mall. In 1989, Dynamit Nobel of America, Inc. ("Dynamit"), a predecessor of HPG, provided roof membrane to Universal Roofing for the construction of the Mall. HPG provided Zamias a 15-year warranty for the roof that expired in August 2004. In November 2004, Reyton, the appellant in this matter, purchased the Mall from Zamias. A month later, the Mall roof shattered, resulting in extensive property damage.

As a result of the property loss, Reyton sued HPG alleging negligence and strict liability under Kentucky law.[1] Reyton alleged that the roof shatter was caused by defects in the roof membrane provided by Dynamit. Reyton claimed $1.8 million in damages to the interior of the Mall and $1.2 million to replace the roof. After discovery, Reyton filed a motion for summary judgment, which the District Court denied after concluding

---

[1] The parties do not dispute that Kentucky law governs this case.

that the economic loss doctrine[2] barred recovery in tort for the loss sustained to the roof and to the interior of the Mall.  Shortly thereafter, in a separate opinion, the District Court granted HPG's motion for summary judgment after concluding that Reyton alleged no viable theory of recovery.

Reyton appeals, arguing that the District Court erred in granting HPG's motion for summary judgment.[3]  Specifically, Reyton alleges that Kentucky would not adopt the economic loss doctrine and instead would apply the "destructive occurrence test" or "damaging event test."[4]  In the alternative, if the economic loss doctrine applies, Reyton argues that only the roof is the product and therefore they are entitled to recover for damage to the interior of the mall.  Additionally, Reyton has requested that we certify the question of whether Kentucky would adopt the economic loss doctrine to the Kentucky Supreme Court.[5]

---

[2] The "economic loss doctrine" is a judicially created doctrine that bars recovery under tort theory when the parties could have contracted for losses, such as those that occurred in this case.

[3] We have jurisdiction under 28 U.S.C. § 1291.  The District Court exercised jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

[4] The "destructive occurrence test" or "damaging event test", as cited by Reyton, allows for recovery under tort theory if there is a destructive occurrence (or damaging event).  See Real Estate Mktg. v. Franz, 885 S.W.2d 921, 926 (Ky. 1994) ("we do recognize that to recover in tort one cannot prove only that a defect exists; one must further prove a damaging event").

[5] We exercise plenary review over the District Court's grant of summary judgment, applying the same test as required by the District Court in their initial determination. Caprio v. Bell Atl. Sickness & Accident Plan, 374 F.3d 217, 220 (3d Cir. 2004).  To grant summary judgment, the District Court views the facts in the light most favorable to the

The primary issue presented on appeal is whether the District Court correctly predicted that the Kentucky Supreme Court would adopt the economic loss doctrine barring Reyton's recovery based on tort theory. While we lack a clear statement from the Kentucky Supreme Court on the adoption of the economic loss issue, there are multiple sources of persuasive authority available. In Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848-49 (6th Cir. 2002), a case involving a property loss in Kentucky, the Sixth Circuit observed that a majority of jurisdictions and the weight of the academic community favor application of the economic loss doctrine to business purchases. In light of Mt. Lebanon, we agree with the District Court that if Kentucky's highest court were faced with the same facts as the case before us, it would adopt and apply the economic loss doctrine. Thus, we will affirm substantially for the thorough and persuasive reasons stated by Judge Nealon in his decision and add only the following comments.

Having determined that the Kentucky Supreme Court would apply the economic loss doctrine, the District Court identified the entire mall as the product. Based on his review of Mt. Lebanon, Judge Nealon concluded that the Kentucky Supreme Court would hold that the product for the economic loss doctrine purposes includes the entire unit for which a party to a business transaction has the ability to distribute risk by contract and to

---

non-moving party and must find that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

insure against loss. In <u>Mt. Lebanon</u>, the court applied the economic loss doctrine to an entire nursing home concluding that the economic loss doctrine "permits recovery for damages to property other than the product purchased but denies recovery for damages to the product itself." <u>Id.</u> at 849. The court identified the entire nursing home as the product because Mt. Lebanon had the ability to allocate risk contractually and/or insure against loss with respect to the entire nursing home. <u>Id.</u> at 851. Similarly, here, Reyton contracted for the purchase of the Mall and could have allocated their risk in a contract or insure against loss. Thus, we agree with the District Court that the Mall is the product that the parties contracted for and recovery for damage to the entire mall is barred by the economic loss doctrine.

Alternatively, Reyton argues that the Kentucky Supreme Court would adopt the "destructive occurrence" or "damaging event" test. The "destructive occurrence test" referred to by Reyton, allows for recovery under tort theory if there is a destructive occurrence (or damaging event). Having determined that the Kentucky Supreme Court would apply the economic loss doctrine, recovery in tort is barred including economic losses caused by a "destructive occurrence."

Finally, Reyton has requested certification to the Kentucky Supreme Court to determine if they would apply the economic loss doctrine to the facts of this case. Because we agree with Judge Nealon's application of <u>Mt. Lebanon</u>, we discern no need to request certification. Moreover, as Judge Nealon noted in his opinion, the Kentucky Supreme Court declined to hear a similar certification request brought in <u>Bowling Green</u>

- 5 -

<u>Mun. Utilities v. Thompson Lumber Co.</u>, 902 F. Supp. 134, 136 (W.D. Ky. 1995) and there is no reason to believe it would grant one here.

For the foregoing reasons, we affirm the District Court's final order granting Defendant HPG's motion for summary judgment and denying certification to the Kentucky Supreme Court.